**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| GERMAN MACEDO, Individually and for Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> G-FORCE AIRCRAFT MAINTENANCE, INC., <br><br> Defendant. | Case No. _____ <br><br> Jury Trial Demanded <br><br> FLSA Collective Action <br> Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

### SUMMARY

1. German Macedo brings this class and collective action to recover unpaid overtime wages and other damages from G-Force Aircraft Maintenance, Inc.

2. G-Force employed Macedo as an Aircraft Maintenance Technician in Rockford, Illinois.

3. G-Force paid Macedo by the hour.

4. Although Macedo regularly worked more than 40 hours in a week, G-Force did not pay him overtime at the proper premium rate required by the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL").

5. Instead, G-Force paid Macedo (and other workers like him) per diems and non-discretionary bonuses that G-Force intentionally excluded when calculating their regular rates of pay for overtime purposes.

1

6. G-Force's per diem and bonus pay schemes violate the FLSA and IMWL by depriving workers like Macedo of overtime pay at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for hours worked after 40 in a workweek.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

9. This Court has general personal jurisdiction over G-Force because G-Force is a domestic corporation.

10. Venue is proper because G-Force is headquartered in Ft. Lauderdale, Florida, which is in this District and Division.

## PARTIES

11. Macedo worked for G-Force as an Aircraft Maintenance Technician from approximately December 2021 until mid-March 2023.

12. Throughout his employment, G-Force paid Macedo on an hourly basis.

13. Throughout his employment, G-Force paid Macedo per diems and non-discretionary bonuses that G-Force intentionally excluded when calculating his regular rate of pay for overtime purposes.

14. Macedo's written consent is attached as **Exhibit 1**.

15. Macedo brings this collective action on behalf of himself and all other similarly situated hourly employees who G-Force paid under its per diem pay scheme and/or bonus pay scheme.

16. G-Force paid each of these employees per diems and/or non-discretionary bonuses that G-Force intentionally excluded when calculating their regular rates of pay for overtime purposes.

2

17. The FLSA Collective of similarly situated employees is defined as:

   **All hourly G-Force employees who were paid (1) per diems and/or (2) bonuses at any time in the past 3 years (the "FLSA Collective Members").**

18. Macedo also seeks to represent such a class under the IMWL pursuant to FED. R. CIV. P. 23.

19. The Illinois Class of similarly situated employees is defined as:

   **All hourly G-Force employees who were paid (1) per diems and/or (2) bonuses while working in Illinois at any time in the past 3 years (the "Illinois Class Members").**

20. The FLSA Collective Members and Illinois Class Members are collectively referred to as the "Putative Class Members."

21. G-Force is a Florida corporation that is headquartered in Ft. Lauderdale, Florida.

22. G-Force can be served through its registered agent: **McDonald & McDonald, 5600 NW 36 Street, Suite 100, Miami, Florida 33166**.

## FLSA COVERAGE

23. At all relevant times, G-Force was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. At all relevant times, G-Force was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25. At all relevant times, G-Force was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment—that have been moved in or produced for commerce.

26. At all relevant times, G-Force has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

27. At all relevant times, the Putative Class Members were G-Force's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

28. At all relevant times, the Putative Class Members were engaged in commerce or in the production of goods for commerce.

29. G-Force uniformly paid the Putative Class Members per diems and/or non-discretionary bonuses that G-Force intentionally excluded when calculating these hourly employees' regular rates of pay for overtime purposes.

30. As a result of G-Force's per diem and bonus pay schemes, the Putative Class Members (which, as noted above, include Macedo) did not receive overtime at the premium rate required by the FLSA.

31. Specifically, G-Force did not pay the Putative Class Members at least 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

32. G-Force's per diem and bonus pay schemes therefore violate the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

33. "G-Force provides … qualified technicians and mechanics [to] the [aviation] industry."[1]

34. G-Force is not, and does not purport to be, a common carrier.

---

[1] https://gforceam.com/ (last visited October 4, 2023).

4

35. To perform the services G-Force markets to its customers, G-Force employs personnel, including Macedo and the Putative Class Members.

36. G-Force assigns these workers to provide services to companies across the country.

37. G-Force uniformly pays the Putative Class Members by the hour.

38. The Putative Class Members regularly work more than 40 hours a week.

39. But G-Force does not pay them overtime wages at the proper premium rate.

40. Instead, G-Force pays the Putative Class Members per diems and/or non-discretionary bonuses that G-Force intentionally excludes when calculating these employees regular rates of pay.

41. While exact job titles and job duties may differ, these employees are subject to the same or similar illegal pay practice(s) for similar work.

42. For example, Macedo worked for G-Force as an Aircraft Maintenance Technician from approximately December 2021 until mid-March 2023 in Rockford, Illinois.

43. Macedo was an hourly employee of G-Force.

44. Specifically, G-Force paid Macedo approximately $13 an hour.

45. Macedo reported his hours to G-Force.

46. G-Force's records reflect the hours Macedo worked each week.

47. Despite knowing Macedo regularly worked overtime, G-Force did not pay him overtime wages at the proper premium rate.

48. Instead, G-Force paid Macedo under its per diem and bonus pay schemes.

49. Because of G-Force's straight time for overtime plan, Macedo did not receive the required "time and a half" overtime premium.

50. G-Force tries to mask its overtime violations by giving the appearance of paying overtime.

5

51. G-Force uses a well-known ploy for evading the FLSA's and IMWL's respective overtime requirements.

52. G-Force labels a large portion of Macedo's hourly wages as "per diems" and "bonuses" (even though they are paid based on hours and/or days worked).

53. When G-Force hired Macedo, his "taxable" wage was listed as $13/hour.

54. G-Force also paid him a "Per Diem" and "Bonus."

55. These "Per Diems" and "Bonuses" are tied to the number of days and/or hours Macedo worked.

56. For example, during the workweek ending on March 4, 2023, Macedo worked 61.93 hours, and G-Force paid him $13/hour for his first 40 hours worked, $19.50 for his 21.93 overtime hours worked, plus a $322.27 bonus and per diems totaling $588:

| BASIS OF PAY | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|
| | Hourly | 40.0000 | 13.0000 | 520.00 | 360.0000 | 4680.00 |
| | Overtime | 21.9300 | 19.5000 | 427.64 | 145.8500 | 2844.10 |
| | Bonus | | | 322.27 | | 2579.95 |
| | Total Hours | 61.9300 | | | 505.8500 | |
| | Gross Earnings | | | 1269.91 | | 10104.05 |
| | Total Hrs Worked | 61.9300 | | | | |
| | PerDiem Reimb (n | | | 588.00 | | 5071.50 |
| | REIMB & OTHER PAYMENTS | | | 588.00 | | 5071.50 |

57. Between his "taxable" wages and his so-called "per diem" and "bonuses," Macedo's actual "regular rate" was approximately $27.70 an hour. 29 U.S.C. § 207(e).

58. But, as noted above, Macedo did not receive overtime based on his actual regular rate of approximately $27.70 an hour.

6

59. Instead, G-Force intentionally excluded Macedo's per diem and bonus when calculating his regular rate of pay and paid him a taxable "overtime wage" of approximately $19.50 an hour (based only on his $13 hourly rate).

60. G-Force pays the Putative Class Members according to the same pay schemes.

61. G-Force pays the Putative Class Members on an hourly basis.

62. G-Force requires the Putative Class Members to report their hours worked.

63. Thus, just as G-Force maintains records of the hours Macedo worked, it maintains records of the hours worked by the similarly situated Putative Class Members.

64. G-Force's records show the Putative Class Members regularly work more than 40 hours a week.

65. Every Putative Class Member worked more than 40 hours in at least one workweek during the last 3 years.

66. Indeed, like Macedo, the Putative Class Members typically work 10 hours a day for at least 5 to 6 days a week (or 50-60 hours).

67. But despite knowing the Putative Class Members regularly worked overtime, G-Force did not pay them overtime wages at the proper premium rate.

68. Instead, G-Force paid the Putative Class Members per diems and/or bonuses that G-Force intentionally excluded when calculating these employees' regular rates of pay for overtime purposes in willful violation of the FLSA and/or IMWL.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

69. Macedo incorporates all other paragraphs by reference.

70. Macedo brings his FLSA and IMWL claims on behalf of himself and the other Putative Class Members.

71. The Putative Class Members are uniformly victimized by G-Force's per diem and/or bonus pay schemes, which are in willful violation of the FLSA and IMWL.

72. Other Putative Class Members worked with Macedo and indicated they were paid in the same manner, performed similar work, and were subject to G-Force's same per diem and bonus pay schemes.

73. Based on his experiences, Macedo is aware G-Force's illegal per diem and bonus pay schemes were imposed on the Putative Class Members.

74. The Putative Class Members are similarly situated in the most relevant respects.

75. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

76. The only *relevant* job duties are whether the Putative Class Members worked more than 40 hours in a week and received per diems and/or bonuses (which, by definition, they did).

77. Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

78. Rather, G-Force's uniform per diem and bonus pay schemes render Macedo and the other Putative Class Members similarly situated for the purposes of determining their right to overtime pay.

79. G-Force's records reflect the number of hours worked each week by the Putative Class Members.

80. G-Force's records also show the Putative Class Members were paid per diems and/or bonuses.

81. G-Force's records also reflect that the Putative Class Members' overtime rates were based solely on their "taxable" hourly rates of pay (and did not include their per diems and/or bonuses).

8

82. The back wages owed to Macedo and the other Putative Class Members can therefore be calculated using the same formula applied to the same records.

83. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to G-Force's records, and there is no detraction from the common nucleus of liability facts.

84. Therefore, the issue of damages does not preclude class or collective treatment.

85. Macedo's experiences are therefore typical of the experiences of the Putative Class Members.

86. Macedo has no interest contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

87. Like each Putative Class Member, Macedo has an interest in obtaining the unpaid wages owed under federal and/or Illinois law.

88. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

89. Absent this class and collective action, many Putative Class Members will not obtain redress for their injuries, and G-Force will reap the unjust benefits of violating the FLSA and IMWL.

90. Further, even if some of the Putative Class Members could afford individual litigation, it would be unduly burdensome to the judicial system.

91. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

92. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

93. Among the common questions of law and fact are:

  a. Whether G-Force applied its per diem pay scheme uniformly to the Putative Class Members;

  b. Whether G-Force applied its bonus pay scheme uniformly to the Putative Class Members;

  c. Whether G-Force intentionally excluded the Putative Class Members' per diems and/or bonuses when calculating their regular rates of pay for overtime purposes in violation of the FLSA and/or IMWL;

  d. Whether G-Force's per diem pay scheme deprived Macedo and the Putative Class Members of the premium overtime wages they are owed under the FLSA and/or IMWL;

  e. Whether G-Force's bonus pay scheme deprived Macedo and the Putative Class Members of the premium overtime wages they are owed under the FLSA and/or IMWL;

  f. Whether G-Force's decision not to pay Macedo and the Putative Class Members overtime wages at the proper premium rate (based on *all* renumeration received) was made in good faith; and

  g. Whether G-Force's FLSA and/or IMWL violations were willful.

94. Macedo knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

95. As part of its regular business practices, G-Force intentionally, willfully, and repeatedly violated the FLSA and IMWL with respect to the Putative Class Members.

96. G-Force's illegal per diem and bonus pay schemes deprived Macedo and the other Putative Class Members of the premium overtime wages they are owed under federal and/or Illinois law.

97. There are many similarly situated Putative Class Members who have been denied overtime pay at the proper premium rate in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

98. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

99. The Putative Class Members are known to G-Force, are readily identifiable, and can be located through G-Force's business and personnel records.

### G-FORCE'S WAGE VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA AND IMWL

100. Macedo incorporates all other paragraphs by reference.

101. G-Force knew it was subject to the FLSA's and IMWL's respective overtime provisions.

102. G-Force knew the FLSA and IMWL required it to pay non-exempt employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

103. G-Force knew each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required these workers to record their hours worked.

104. G-Force knew the Putative Class Members were its hourly employees.

105. G-Force knew it paid the Putative Class Members on an hourly basis.

106. G-Force knew it paid the Putative Class Members an hourly rate plus per diems and/or bonuses.

107. G-Force knew it based the Putative Class Members' overtime rates solely on their "taxable" hourly rates.

108. G-Force intentionally excluded the Putative Class Members' per diems and/or bonuses when calculating their regular rates of pay for overtime purposes.

109. G-Force's per diem and bonus pay schemes were designed to mask its violations of the FLSA and/or IMWL.

110. G-Force knew it was not a common carrier.

111. Nonetheless, G-Force intentionally excluded the Putative Class Members' per diems and/or bonuses when calculating these employees' regular rates of pay for overtime purposes.

112. G-Force's decision to exclude the Putative Class Members' per diems and/or bonuses when calculating their regular rates of pay for overtime purposes was neither reasonable, nor was the decision to exclude these employees' per diems and/or bonuses when calculating their regular rates of pay for overtime purposes made in good faith.

113. Likewise, G-Force's failure to pay the Putative Class Members overtime wages at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime wages at the proper premium rate made in good faith.

114. G-Force knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA and IMWL.

115. G-Force knowingly, willfully, and/or in reckless disregard carried out these illegal per diem and bonus pay schemes that systematically deprived the Putative Class Members of premium overtime wages for the hours they worked after 40 in a workweek in violation of the FLSA and/or IMWL.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

116. Macedo incorporates all other paragraphs by reference.

117. Macedo brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

118.    G-Force violated, and is violating, the FLSA by employing non-exempt employees (Macedo and the FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for the hours they worked after 40 in a workweek. 29 U.S.C. § 207(a).

119.    G-Force's unlawful conduct harmed Macedo and the other FLSA Collective Members by depriving them of overtime wages at the proper premium rate they are owed.

120.    Accordingly, G-Force owes Macedo and the FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

121.    Because G-Force knew, or showed reckless disregard for whether, its pay practices violated the FLSA, G-Force owes these wages for at least the past 3 years.

122.    G-Force is liable to Macedo and the FLSA Collective Members for an amount equal to all unpaid overtime as liquidated damages.

123.    Macedo and the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
### (ILLINOIS CLASS)

124.    Macedo incorporates all other paragraphs by reference.

125.    Macedo brings his IMWL claim on behalf of himself and the Illinois Class Members pursuant to FED. R. CIV. P. 23.

126.    The conduct alleged violates the IMWL (820 ILCS 105/1, *et seq.*).

127.    At all relevant times, G-Force was an "employer" within the meaning of the IMWL.

128.    At all relevant times, G-Force employed Macedo and the Illinois Class Members as covered "employees" within the meaning of the IMWL.

129. The IMWL requires employers, like G-Force, to pay employees, including Macedo and the Illinois Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

130. Macedo and the Illinois Class Members are entitled to overtime pay under the IMWL.

131. G-Force violated, and is violating, the IMWL by failing to pay Macedo and the Illinois Class Members overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek. *See* 820 ILCS 105/4a.

132. G-Force's unlawful conduct harmed Macedo and the Illinois Class Members by depriving them of the overtime wages at the proper premium rate they are owed.

133. Accordingly, G-Force owes Macedo and the Illinois Class Members the difference between the rate actually paid and the proper overtime rate.

134. G-Force is liable to Macedo and the Illinois Class Members for an amount equal to two times their unpaid overtime as treble damages.

135. G-Force is also liable to Macedo and the Illinois Class Members for monthly statutory damages on these amounts at the highest applicable rates.

136. Macedo and the Illinois Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## JURY DEMAND

137. Macedo demands a trial by jury.

## RELIEF SOUGHT

Macedo, individually and on behalf of the Putative Class Members, seeks the following relief:

    a. An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the FLSA Collective Members allowing them to join this collective action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Macedo and his counsel to represent the interests of the FLSA Collective and Illinois Class;

d. An Order pursuant to Section 16(b) of the FLSA finding G-Force liable for unpaid overtime wages due to Macedo and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding G-Force liable to Macedo and the Illinois Class Members for unpaid overtime wages owed under the IMWL, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

f. An Order awarding attorneys' fees, costs, and expenses available under the FLSA and IMWL;

g. A Judgment against G-Force awarding Macedo and the Putative Class Members all their unpaid overtime wages, liquidated damages, treble damages, monthly statutory damages, attorneys' fees, costs, expenses, and any other penalties available under the FLSA and/or IMWL;

h. An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

i. All such other and further relief to which Macedo and the Putative Class Members may show themselves to be justly entitled.

Dated: October 5, 2023.

Respectfully submitted,

**MORGAN & MORGAN, PA**

By:  /s/ *C. Ryan Morgan*
     C. Ryan Morgan, Esq.
     FBN 0015527
20 N. Orange Ave., 15th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Phone: (407) 420-1414
Fax: (407) 245-3401
rmorgan@forthepeople.com
*Local Counsel for Plaintiff*

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR MACEDO AND THE PUTATIVE CLASS MEMBERS**